## UNITED STATES v. BACH.
### No. 8837.

Circuit Court of Appeals, Seventh Circuit.
Dec. 3, 1945.
Rehearing Denied Jan. 4, 1946.

Myer H. Gladstone, of Chicago, Ill., for appellant.

J. Albert Woll and Jack Arnold Welfeld, U. S. Atty., both of Chicago, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and BALTZELL, District Judge.

BALTZELL, District Judge.

Defendant-Appellant, hereinafter referred to as defendant, was convicted of the violation of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A. Appendix § 901 et seq., and of Maximum Price Regulation No. 445 in that he sold a number of cases of whiskey at a price in excess of the maximum price permitted under such act and regulation. Trial was by the court without a jury.

The indictment was in three counts, each count of which charged a violation of the Emergency Price Control Act of 1942, as amended, and of Maximum Price Regulation No. 445. Each count charged a different sale, but to the same individual, and at different times. Those named in the indictment were Pines Bros. Distributing Company, Samuel Pines, Albert Pines and Alfred Bach. The court found Samuel Pines and Albert Pines not guilty, but the other defendants were each found guilty, and both filed notice of appeal. On August 25, 1945, however, Pines Bros. Distributing Company dismissed its appeal, so that the only defendant named in the indictment who is challenging the finding and judgment of the court is the defendant, Alfred Bach.

The first count of the indictment charges that the defendant, on September 27, 1943,

sold 10 cases of Winfield Whiskey to Bernard Singer, doing business as the Quincy Confectionery, a retail liquor dealer, at the sum of $36 per case, which was in excess of the maximum price permitted for such sale. The second count charges that the defendant, on October 4, 1943, sold 5 cases of Winfield Whiskey to the same individual at the same price, which was in excess of the maximum price permitted. The third count charges that the defendant, on November 10, 1943, sold 10 cases of Philip Morris Whiskey to the same individual at the sum of $36 per case, which was in excess of the maximum price permitted for such sale. It is stipulated that the maximum or ceiling price of the whiskey charged to have been sold by defendant upon the dates of the sales as charged in the indictment was $21.85 per case.

The defendant in this appeal contends that the evidence fails to prove his guilt; that the oral testimony is inconsistent with the documentary evidence, and that there is a variance between the charge in the indictment and the proof as to the person to whom the sale was made.

█ There can be no doubt as to the sufficiency of the evidence to sustain the finding and judgment of the district court. It must be remembered that it is the function of the trial court to weigh the evidence and to determine the credibility of the witnesses. If there is competent and substantial evidence to support such finding and judgment, it must be sustained. Dixon v. United States, 7 Cir., 113 F.2d 640.

There was competent and substantial evidence which showed that the defendant was a salesman for Pines Bros. Distributing Company, and had been for a long period of time prior to 1943 and, as such salesman, had sold whiskey to Bernard Singer upon many occasions. During the months of September, October and November, 1943, he was not employed upon a full time basis by such company, but did contact its customers and did receive a commission upon the amount of the sales made by him. It was to his interest, therefore, to make as large sales as possible, because upon the amount of each sale depended the commission which he would receive. Bernard Singer and his father, Herman Singer, were associated in the operation of a store in which, among other things, whiskey was retailed. This store was known as the Quincy Confectionery,

but was not a corporation. According to the testimony of Bernard Singer, he purchased for such confectionery 10 cases of Winfield Whiskey from the defendant as agent or salesman for Pines Bros. Distributing Company on September 28, 1943, for which he paid, by checks, the sum of $36 per case. He further testified that, on October 4, 1943, he purchased from such defendant as such agent 5 cases of the same brand of whiskey for which he paid the sum of $36 per case; that, on November 10, 1943, he also purchased from such defendant as such agent 10 cases of Philip Morris Whiskey for which he paid the sum of $36 per case. As heretofore stated, the ceiling or maximum price of all the whiskey thus purchased was $21.85 per case. It is thus apparent that, if the testimony of Bernard Singer is believed, the defendant did sell such whiskey at a price which was $14.15 per case in excess of the maximum or ceiling price permitted. True, the defendant denied that such sales were for an amount over and above the maximum or ceiling price, but did admit such sales. It was the province of the trial court to determine whom it would believe, and the fact that it believed the testimony of Singer is no ground for setting aside its finding and judgment, even though the defendant testified differently. The fact is, there was ample documentary evidence in the nature of invoices and checks to corroborate Singer's testimony when considered in connection with his oral testimony in explanation of such invoices and checks. Instead of this documentary evidence being inconsistent with the oral testimony, as contended by the defendant, it is indeed consistent with such testimony. In each instance, the price of the whiskey, as shown on the invoice, was the ceiling price and, usually, there was a check issued to the company to correspond in amount to the invoice price but, in most instances, another check was issued in an amount equal to the excess over and above the ceiling price per case and $36.00 per case, the sale price. These checks were payable to the company but, usually although not always, were delivered by Singer to the defendant.

As an illustration of the manner in which the various transactions were carried on, Singer testified that he purchased from the company, through the defendant as its agent, 10 cases of Winfield Whiskey, for which he paid $36 per case, or a total of $360. He further testified

that he paid for this whiskey with two checks, one in the amount of $224.04 which included the 10 cases of Winfield Whiskey at the ceiling price of $218.50 and 2 bottles of Four Roses for $5.54, making the total of $224.04, and another check in the amount of $141.50 which Singer testified "is the difference between the ceiling price and the $36.00 price on that whiskey." It is apparent that the amount of the ceiling price contained in the check, or $218.50, and the amount of the other check, or $141.50, aggregates the sum of $360, which was the sale price of 10 cases of Winfield Whiskey at $36 per case. In each sale the invoice represented the ceiling price only, but the actual payment was at the rate of $36 per case, and this was known to the defendant. There is evidence that he, himself, took the check for the overcharge in at least one instance and, in any event, it was he who told Singer what the price was.

The fact that the price was paid to Pines Bros. Distributing Company and did not go to the defendant does not relieve him from his criminal responsibility for having made the sale. He actually participated in the transaction and knowingly and intentionally sold the whiskey at a price over the ceiling. The fact that the corporation may or may not also be liable does not absolve its agent who makes an illegal sale, even though, at the time of the sale, he is acting in a representative capacity. Corporate agents may be criminally liable individually for acts done by them on behalf of the corporation, even though the corporation may or may not be liable. United States v. Weiss, 2 Cir., 150 F.2d 17, certiorari denied 66 S.Ct. 45; United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48, 19 Corpus Juris Secundum, Corporations, § 931, p. 363.

It is charged in each count of the indictment that the defendants, one of whom was Bach, sold the whiskey in question to Bernard Singer, doing business as Quincy Confectionery. The defendant contends that the sales of whiskey made by him were made to Herman Singer, the father of Bernard Singer, and not to Bernard Singer, as charged in the indictment, and that, therefore, there is a fatal variance between the charge in the indictment and the proof. The invoices were made to the "Quincy Confectionery"; the checks in payment thereof and in payment of the excess were signed by "Marian Singer."

Bernard Singer testified that at the date of the trial he worked in a war plant, but that prior thereto he was associated with his father in the operation of a store known as the Quincy Confectionery at 226 South Cicero Avenue, Chicago, Illinois, and that he used to buy whiskey and fountain supplies for such confectionery. He further testified that he purchased the whiskey in question from Pines Bros. Distributing Company through its regular salesman, Alfred Bach. In fact, practically all transactions were between the defendant and Bernard Singer.

Section 269 of the Judicial Code, as amended, 28 U.S.C.A. § 391, provides: "On the hearing of any appeal, certiorari, writ of error, on motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of parties." In Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 630, 79 L.Ed. 1314, a criminal case dealing with variance, the court said: "The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense. * * * Evidently Congress intended by the amendment to section 260 to put an end to the too rigid application, sometimes made, of the rule that error being shown, prejudice must be presumed; and to establish the more reasonable rule that if, upon an examination of the entire record, substantial prejudice does not appear, the error must be regarded as harmless."

If the defendant had been indicted for selling whiskey to Bernard Singer, and had been convicted on evidence which established that he sold the whiskey to Herman Singer, the variance might be serious but no such a situation exists. The evidence is conclusive that the sale was made to Bernard Singer, as charged in the indictment. The selling of the whiskey above the ceiling price constituted

the offense; the defendant knew what the charges were and could not have been prejudiced in his defense in that regard. As to the question of second jeopardy for the same offense, the conviction in this case is a bar to any future prosecution for selling the same whiskey. There was no variance between the charge and the proof.

The judgment is affirmed.