## REARICK v. PENNSYLVANIA.

### ERROR TO THE SUPERIOR COURT OF THE STATE OF PENNSYLVANIA.

No. 47.    Argued October 18, 19, 1906.—Decided December 17, 1906.

Where orders are given for goods sold in a State by an agent of a person employed to solicit them in another State, and the purchaser is not bound to pay for the goods until delivery and unless according to sample, the goods sent specifically to the customer in fulfillment of such orders are, until actually delivered, within the protection of the commerce clause of the Constitution, and a municipal ordinance requiring a license fee for the solicitation of orders for delivering goods not of the parties' own manufacture is void as an interference with interstate commerce against such an agent.

THE facts are stated in the opinion.

*Mr. Campbell M. Voorhees* for plaintiff in error, submitted:

It is a principle established beyond controversy that the negotiation of sales of goods that are in another State for the purpose of introducing them into the State in which the negotiation is made is interstate commerce, and is protected from local interference, burdens, or tax, by clause 3, § 8, Art. I, Constitution of the United States, which provides that Congress shall have power to regulate commerce with foreign nations and among the several States and with the Indian

tribes. *Robbins* v. *Taxing District of Shelby County*, 120 U. S. 489; *Corson* v. *Maryland*, 120 U. S. 502; *Leloup* v. *Mobile*, 127 U. S. 640; *Asher* v. *Texas*, 128 U. S. 129; *Stoutenburg* v. *Hennick*, 129 U. S. 140; *McCall* v. *California*, 136 U. S. 104; *Crutcher* v. *Kentucky*, 141 U. S. 47; *Brennan* v. *Titusville*, 153 U. S. 289.

The delivery of goods to a buyer at his residence in one State, that have been sent in pursuance of contract by a seller in another State, is interstate commerce and subject to no state nor local burdens. · The right to solicit orders implies the obligation and the right to deliver the goods in the manner called for by the contracts; and the means by which the delivery is made cannot be controlled by the States. *Bowman* v. *Railroad Co.*, 125 U. S. 465, 479; *State Freight Tax*, 15 Wall. 232, 275; *Rhodes* v. *Iowa*, 170 U. S. 412; *Caldwell* v. *North Carolina*, 187 U. S. 622; *N. & W. R. R. Co.* v. *Sims*, 191 U. S. 441; *American Express Co.* v. *Iowa*, 196 U. S. 133.

The ordinance in question is unconstitutional and void as discriminating between persons and denying the equal protection of the laws. It gives rights, privileges and immunities to some which it denies to others. It is in violation of the last clause of § 1 of the Fourteenth Amendment. *State* v. *Whitcomb*, 99 N. W. Rep. 468; *State* v. *Wagner*, 69 Minnesota, 205; *Flatau* v. *Mansfield*, 14 Ohio C. C. 596; *Conolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540.

*Mr. Harry S. Knight* and *Mr. S. P. Wolverton* for the defendant in error, submitted:

The facts bear every test of a sale in Pennsylvania and none of a sale in Ohio. The sale did not take place until the goods were delivered by Rearick at the residences of the several purchasers, and he, Rearick, received the money therefor. Rearick was therefore selling goods at retail from house to house in Sunbury and was engaged solely in intrastate commerce, and, even though delivery was made in the original package, Rearick and his goods would, nevertheless, under

the decisions in *Woodruff* v. *Parham,* 8 Wall. 123; and *Hinson* v. *Lott,* 8 Wall. 148; and other cases, be subject to a general state tax. *Commonwealth* v. *Holstine,* 132 Pennsylvania, 357; *Commonwealth* v. *Garbracht,* 96 Pennsylvania, 449; *Commonwealth* v. *Hess,* 148 Pennsylvania, 98.

But if Rearick, the plaintiff in error, at the time of delivering the goods was engaged in interstate commerce, still the Sunbury ordinance in question was not an unconstitutional regulation of interstate commerce; and did not violate Clause 3, § 8, Art. I, of the Federal Constitution, providing that Congress shall have power to regulate commerce with foreign nations and among the several States. Cases *supra* and *American Steel & Wire Co.* v. *Speed,* 192 U. S. 518; *Emert* v. *Missouri,* 156 U. S. 296; *Brown* v. *Houstin,* 114 U. S. 622.

The Sunbury ordinance in question does not violate § 1 of the Fourteenth Amendment by discriminating in favor of producers. *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 89.

MR. JUSTICE HOLMES delivered the opinion of the court.

This case comes here upon a writ of error to the Superior Court of Pennsylvania, an appeal to the Supreme Court of the State having been disallowed by the last-named court. The Superior Court affirmed a conviction of the plaintiff in error for violating an ordinance of the Borough of Sunbury, which made it unlawful to solicit orders for, sell, or deliver, at retail, either on the streets or by travelling from house to house, foreign or domestic goods, not of the parties' own manufacture or production, without a license for which a large fee was required. 26 Pa. Sup. Ct. Rep. 384. In the Court of Quarter Sessions, where the plaintiff in error was convicted, the case was heard upon an agreed statement of facts. Upon these facts the plaintiff in error asked for a ruling that his acts were done in carrying on interstate commerce and that the ordinance was void as to him, under Clause 3, Section 8, Article I, of the

Constitution, the commerce clause; and saved his rights. The Fourteenth Amendment also was relied upon, but it is unnecessary to state details concerning that.

The following is a shortened statement of the facts agreed. An Ohio corporation employed an agent to solicit in Sunbury retail orders to the company for groceries. When the company had received a large number of such orders it filled them at its place of business in Columbus, Ohio, by putting up the objects of the several orders in distinct packages, and forwarding them to the defendant by rail, addressed to him "For A. B.," the customer, with the number of the order also on the package for further identification. The company ultimately kept the orders, but it kept no book accounts with the customers, looking only to the defendant. The defendant alone had authority to receive the goods from the railroad, and when he received them he delivered them, as was his duty, to the customers, for cash paid to him. He then sent the money to the corporation. The customer had the right to refuse the goods if not equal to the sample shown to him when he gave the order. In that or other cases of non-delivery the defendant returned the goods to Columbus. No shipments were made to the defendant except to fill such orders, and no deliveries were made by him except to the parties named on the packages. In the case of brooms, they were tagged and marked like the other articles, according to the number ordered, but they then were tied together into bundles of about a dozen, wrapped up conveniently for shipment. The defendant had no license, but relied upon the invalidity of the ordinance, as we have said.

If the acts of the plaintiff in error were done in the course of commerce between several States, the law is established that his request for a ruling was right, and that he should have been discharged. *Robbins* v. *Shelby County Taxing District,* 120 U. S. 489, 497; *Leisy* v. *Hardin,* 135 U. S. 100; *Caldwell* v. *North Carolina,* 187 U. S. 622. It will be seen from the insertion of the statement concerning the brooms that a ground

relied upon by the prosecution to avoid that conclusion was that the goods, or at least this part of them, were not in the original packages when delivered, and that therefore the case did not fall within the decisions last cited, but rather within *Austin* v. *Tennessee*, 179 U. S. 343, *May* v. *New Orleans*, 178 U. S. 496, and *Cook* v. *Marshall County*, 196 U. S. 261. In other words, it was contended that the brooms before they were sold had become mingled with, or part of, the common mass of goods in the State, and so subject to the local law. But the doctrine as to original packages primarily concerns the right to sell within the prohibiting or taxing State goods coming into it from outside. When the goods have been sold before arrival the limitations that still may be found to the power of the State will be due, generally, at least, to other reasons, and we shall consider whether the limitations may not exist, irrespective of that doctrine, in some cases where there is no executed sale. Hence the prosecution, whatever its assumption on the point last mentioned, sought to show that there was no sale until the goods were delivered and the cash paid for them. The Superior Court contented itself with the suggestion that the contract would have been satisfied by the delivery of articles corresponding to sample, although bought at the next door. The argument submitted to us goes farther, and affirms that the order was not accepted and did not bind the corporation until the delivery took place.

The answer to the latter of the two positions just stated is simple. The fair meaning of the agreed fact that the orders were given to agents employed to solicit them, is that the company offered the goods and that the orders were acceptances of offers from the other side. If there were the slightest reason to doubt that the contracts were made with the company through its authorized agent at the moment when the orders were given, which we do not perceive that there is, certainly the contrary could not be assumed in order to sustain a conviction. It is for the prosecution to make out its case. We may mention here in parenthesis that of course it

does not matter to the question before us that the contract was made in Pennsylvania. *Brennan* v. *Titusville*, 153 U. S. 289. The other suggestion, that the company would have been free to deliver any articles equal to sample, as well if bought in Pennsylvania as if coming from Ohio, of course assumes that there was a contract. With regard to this argument it might be an interesting question whether the shipments described amounted to authorized appropriations of the goods to the contracts, notwithstanding the fact that the deliveries were to be only for cash; but we are not required to go into such niceties. The decisions already in the books go as far as it is necessary for us to go in order to decide this case.

"Commerce among the several States" is a practical conception not drawn from the "witty diversities" (Yelv., 33) of the law of sales. *Swift & Co.* v. *United States*, 196 U. S. 375, 398, 399. The brooms were specifically appropriated to specific contracts, in a practical, if not in a technical, sense. Under such circumstances it is plain that, wherever might have been the title, the transport of the brooms for the purpose of fulfilling the contracts was protected commerce. In *Brennan* v. *Titusville*, 153 U. S. 289, pictures were sold by sample, as the brooms were here, and although the pictures were consigned to the purchasers directly, the railroad collecting the price, there was no discussion of the question whether the title had passed. In *American Express Co.* v. *Iowa*, 196 U. S. 133, 143, that question was referred to only to be waived. In *Caldwell* v. *North Carolina*, 187 U. S. 622, the pictures were consigned to the defendant, an agent, as here, with the additional facts that the pictures and frames were sent in large packages, which were opened by the agent on their arrival, and that the pictures, then for the first time, were put into their proper frames, and, for all that appears, then for the first time appropriated to specific purchasers. In the court below all the judges agreed that the title did not pass until delivery. 127 N. Car. 521, 526, 527. This court intimated

nothing to the contrary. On the special verdict it well might be that the sale was by sample, as in *Brennan* v. *Titusville.* It was decided that the intervention of an agent made no difference in the result. The Superior Court distinguished that case as one that necessarily involved interstate commerce because it called for the skill of the seller, but no such fact appears in the case or was referred to as a ground of decision, and there is no sufficient warrant for assuming it to be true.

Some argument was made, to be sure, that even if the defendant was engaged in interstate commerce when he delivered the goods, still the ordinance bound him. *American Steel & Wire Co.* v. *Speed,* 192 U. S. 500, was especially relied upon. But that decision did not modify the cases that we have cited. It dealt with a case where a mass of nails and iron wire was collected at Memphis from other States, by a manufacturer, for all purposes; some of the goods to be sold on the spot, some ultimately to be forwarded to purchasers in other States, but no package being consigned to or intended for any special customer, or free from the chance of being sold by a new bargain in Tennessee. Under such circumstances the goods were liable to taxation in that State. The distinction between that case and the present does not need further emphasis. In view of the many decisions upon the matter we deem further argument unnecessary to show that the judgment below was wrong.

*Judgment reversed.*