### PICTORIAL REVIEW CO. v. CITY OF ALEXANDRIA et al.

#### No. 418.

District Court, W. D. Louisiana, Alexandria Division.

Sept. 17, 1930.

Dawkins & Roberts and Gus A. Voltz, all of Alexandria, La., for complainant.

Thornton, Gist & Richey, of Alexandria, La., for respondents.

DAWKINS, District Judge.

Complainant, a New York corporation, is the publisher of a monthly magazine and employs numerous persons to canvass for ,subscriptions thereto throughout the United States and foreign countries. It alleges in this case that certain of its agents, while so engaged in the city of Alexandria, were arrested and charged with the violation of a city ordinance carrying fine and imprisonment, which said ordinance it claims contravenes the interstate commerce clause of the federal Constitution; that its said business constitutes such commerce for the reason that the orders and subscriptions taken by its said agents are transmitted and accepted by it at its home office in the city of New York, where the periodical is manufactured or published and shipped through the mails and by express to its customers in other states.

On this showing a temporary restraining order was granted, and on hearing the same was continued in force until the application for a preliminary injunction could be disposed of.

The city and its officers, who were made defendants, appeared at the hearing and admitted that the agents of the complainant had been arrested for violating an ordinance of the city "prohibiting soliciting from house to house, without a permit, and that after they had convinced the proper officers of the city of Alexandria of their right to them, they were granted permits and the charge against them dropped * * *"; that later a representative of complainant, under the guise of collecting for complainant, "engaged in peddling punch boards, vacuum cleaners, etc. and obscene and illegal articles used for immoral purposes * * * without a permit from the city * * *"; that said agent was arrested and fined on a plea of guilty; that later other representatives of the complainant came to the city and began soliciting "without permits, knowing that it was in violation of an ordinance of the city. It is denied that they were arrested for violating said ordinance but it is averred that they were advised not to solicit further in the city of Alexandria without permits and that they would be arrested if they persisted in doing so * * *"; that by reason of the fact that complainant's said agents had previously engaged "in the sale of unlawful articles and in peddling without licenses under the guise of soliciting for complainant and had on numerous other occasions attempted to solicit in the city of Alexandria, without permits, in violation of its laws and ordinances, the mayor had refused to issue permits to complainant's representatives and instructed the chief of police to have them arrested. They show further that no appeal was taken or other efforts made to secure a permit after the same had been refused; that the said agents continued to solicit without permits and they were arrested on the instructions of said mayor, and their cases were set for trial at the time these proceedings were instituted; that an ordinance requiring permits "is absolutely necessary for the protection of the health, morals and welfare of the public"; and that, upon proper showing of the good character and proper intentions of the said agents to pursue a legitimate business, permits would be granted.

The matter was heard on affidavits, and there is little dispute as to the main facts, that the plaintiff is engaged in interstate commerce, that its representatives take orders for merchandise, the magazine known as "Pictorial Review," and the latter is shipped and delivered to its customers through the mails and by express; that the city has such an ordinance as is charged in

the bill, and that it will enforce the same through criminal prosecutions unless the complainant's said agents obtain permits, as required thereby.

The first question raised is the contention of respondent that a court of equity is without jurisdiction to enjoin a criminal prosecution of this character. This is the general rule, but there is a well-known exception which is about as thoroughly established in the jurisprudence as the rule itself, and that is, where a property right is seriously injured and there is no adequate protection therefor at law, a court of equity will enjoin the enforcement by criminal process of an unconstitutional statute or ordinance. Traux v. Raich, 239 U. S. 33, 36 S. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283; Dobbins v. Los Angeles, 195 U. S. 223, 25 S. Ct. 18, 49 L. Ed. 169. In the present case it seems that the complainant is without adequate remedy, for the city may and probably will continue to arrest its agents unless they comply with the ordinance which is assailed. Its business may thereby be greatly restricted, if not prohibited altogether. I, therefore, conclude that the equity powers of the court are properly invoked.

The city ordinance in question reads as follows:

### "Penal Ordinance No. 249.

"An Ordinance providing for the issuance of permits to persons engaged in soliciting orders for, or in the sale of, or offering for sale, any book, magazine or other periodical or any article of merchandise, where said sales are made by canvasing from house to house, or on the streets, sidewalks or alleys of the City of Alexandria, and prescribing a penalty for the violation of this ordinance.

"Section 1. Be It Ordained, by the Council of the City of Alexandria, in session legally convened, that it shall be unlawful for any person to sell, take orders for, or offer to sell by canvasing from house to house or on the streets, sidewalks and alleys of the City of Alexandria, any book, magazine or other periodical, or any article of merchandise, without having first obtained from the Mayor, a permit so to do.

"Section 2. Be It Further Ordained, etc. that before issuing a permit, the Mayor shall have authority to require such reference and guarantees as he may deem necessary and proper, and may require the applicant to furnish bond with good and solvent security in the sum of not exceeding One Hundred Dollars, which bond shall be payable to the City of Alexandria for the use and benefit of any person or persons who may be defrauded or injured or damaged by the failure of the person having such permit to deliver the goods which he has taken orders for, in accordance with his agreement and understanding with his customer.

"Section 3. Be It Further Ordained, that the Mayor may, in his discretion, refuse to issue a permit to anyone whom he does not deem responsible or worthy or for any other cause, and he may revoke any permit that he has already issued to anyone who shall in any way attempt to defraud his customers, provided that should the Mayor refuse to issue a permit or revoke a permit already issued, his action in so doing shall be subject to review by the Council of the City of Alexandria, and any person complaining in the premises shall have the right of appeal to the Council within thirty days after the refusal to grant said permit or the revocation of said permit, provided, however, that the action of the Mayor in refusing to grant a permit or in revoking a permit already issued shall remain in effect and have full force and validity unless and until set aside by the Council.

"Section 4. Be It Further Ordained, etc., that this ordinance shall not apply to drummers or other representatives of wholesale houses, selling direct to wholesalers, retailers or jobbers in the City of Alexandria.

"Section 5. Be It Further Ordained, etc., that whoever shall violate any of the provisions of this ordinance shall be deemed guilty of misdemeanor and upon conviction shall be fined not less than One Dollar nor more than Twenty-Five Dollars, and in default of payment of said fine, by imprisonment not exceeding thirty days, or both in the discretion of the City Judge, for each offense."

There is no question but that the city has the right to protect its citizens from imposition by persons who may violate its police regulations intended for the protection of property, morals, health, and safety, where the nature of the business is inherently dangerous; but it cannot, because of any supposed or real difficulty in controlling the personal conduct of individual agents, not necessary to their employment, impose an unwarranted burden upon an otherwise harmless and legitimate traffic in interstate commerce. The complainant is admittedly engaged in a business involving no element of danger, and restrictions of the kind embraced in this ordinance are a direct interfer-

ence with that free and full flow of trade between citizens of the several states which is contemplated by the constitutional provision intrusting to Congress the exclusive power to regulate it. If the city can require a permit, it may also impose a license fee of such magnitude as to be prohibitive. The requirement with respect to examination and the giving of bond, coupled with the power in the mayor with the right of appeal to the council to deny altogether the right of any one to act as agent of the complainant, is an unreasonable restriction upon its business which affects directly interstate commerce.

If there have been or may be violations of its general police ordinances for the protection of persons and property, or if said agents are peddling goods in the sense of carrying the same along with them and making sales and deliveries on the spot, then the remedy is to punish the individuals in each case, according to the nature of the offense, just as it would any other crime, and not to prohibit the engaging in interstate commerce until the city shall censor in advance the character and qualifications of the agents and exact bond of those who wish to deal therein for the benefit of persons who may be injured through the personal torts of the agents. Crutcher v. Kentucky, 141 U. S. 47, 11 S. Ct. 851, 35 L. Ed. 649; Rearick v. Pennsylvania, 203 U. S. 507, 27 S. Ct. 159, 51 L. Ed. 295; Stewart v. Michigan, 232 U. S. 665, 34 S. Ct. 476, 58 L. Ed. 786; Caldwell v. North Carolina, 187 U. S. 622, 23 S. Ct. 229, 47 L. Ed. 336; Real Silk Hosiery Mills v. City of Portland, 268 U. S. 325, 45 S. Ct. 525, 69 L. Ed. 982. Of course, in any case where obscene matter is peddled, the city may prohibit, by arrest and prosecution if necessary.

Undoubtedly, the state or municipality acting under state authority may require the submission for personal examination of those agents of a foreign corporation carrying on its interstate business in the state where the nature of their duties is such as to require skill, training, or proper physical qualifications to enable them to perform the same with safety to the public, such as pilots, locomotive engineers, bus drivers, etc. 12 C. J. 49, verbo "Commerce" § 59; Id., p. 64, § 82. However, the business of plaintiff does not fall within that class.

For the reasons assigned, I am of the view that the complainant is entitled to a preliminary injunction restraining the enforcement of the ordinance complained of until a trial upon the merits. Proper decree may be presented.