## TERRITORY OF ALASKA v. SEARS ROEBUCK & CO.
### No. 5351–A.

United States District Court, Alaska, First Division, Juneau.

June 20, 1947.

See, also, 11 Alaska 333.

Ralph J. Rivers, Atty. Gen., of Alaska, and Frank L. Oliver, Asst. Atty. Gen., of Alaska, for plaintiff.

R. E. Robertson, of Juneau, Alaska, for defendant.

FOLTA, District Judge.

The question presented in this controversy is whether the defendant is subject to the provisions of section 3138, C.L.A. 1933 that:

"Any person, firm or corporation, prosecuting or attempting to prosecute any of the following lines of business, or who shall employ any of the following appliances, in the Territory of Alaska, shall apply for and obtain a license and pay for such license, for the respective lines of business and appliances, as follows—* * *

"13. Mercantile establishments, other than exclusively wholesale mercantile establishments, doing business of more than one hundred thousand dollars per annum, fifty dollars per annum, on each twenty thousand dollars' worth of business done in excess of one hundred thousand dollars."

The parties have agreed that the business of the defendant was conducted as set forth in the amended answer which, so far as is essential to a consideration of the

question, is that the defendant maintains order offices in the principal towns of the Territory for the accommodation of persons who desire to place orders for its merchandise; that the orders are transmitted to defendant at Seattle for acceptance or rejection; that shipments are made by common carrier or parcel post to the customer direct or to the order offices for delivery to the customer; that the only local business done by the defendant, consisting of the sale of bulky articles rejected by customers on delivery and samples, amounted for the period involved to less than the minimum on which the tax may be imposed under subsection 13.

The fact that the local business is not, for the reason stated, taxable eliminates the question whether a statute such as this, which lays a tax on local and interstate business indiscriminately, is not invalid and leaves for consideration the sole question as to whether the remainder of the business may be taxed or, in other words, whether it is applicable to one engaged exclusively in interstate commerce. The facts stipulated conclusively show that this business of the defendant is, regardless of where delivery is made or title passes to the customer, interstate commerce and, hence, the precise question remaining is whether, notwithstanding the character of the business, the tax can be sustained as one that does not burden interstate commerce in the constitutional sense.

The statute is general in its terms and nondiscriminatory, and is unquestionably valid so far as its applicability to local business is concerned. The present attempt, however, to apply it to interstate business is apparently made in reliance upon certain expressions found in recent decisions of the Supreme Court and dissenting opinions which lend encouragement to those who would tax a subject traditionally regarded as exclusively within the federal sphere. The notion is that statements of the Supreme Court of the United States, such as that "Interstate commerce must pay its way," have so weakened the force of precedents as to justify the view that a tax on interstate commerce, so long as it is not discriminatory or unduly burden-

some, will be sustained. But this conclusion overlooks the fact that this and like statements were made in connection with sustaining taxes laid on certain local activities and incidents connected with interstate commerce that were once considered integral and inseparable parts of the commerce itself. Manifestly, taken at face value the statement would obliterate the commerce clause and permit the renewal of trade barriers between states that it was the object of the commerce clause of the Constitution to remove. That the statement is not to be taken literally is apparent from what the court said in Nippert v. Richmond, 327 U.S. 416, 423, 66 S.Ct. 586, 589, 90 L.Ed. 760, 162 A.L.R. 844: "If the only thing necessary to sustain a state tax bearing upon interstate commerce were to discover some local incident which might be regarded as separate and distinct from 'the transportation or intercourse which is' the commerce itself, and then to lay the tax on that incident, all interstate commerce could be subjected to state taxation and without regard to the substantial economic effects of the tax upon the commerce."

Much ingenuity has been displayed in devising formulae and taxes so that every step and transaction, preceding the commencement of and following the actual journey in interstate commerce, is now taxed and it is doubtful whether anything but the journey itself remains immune. Obviously, the process cannot be continued without nullification of the commerce clause, and that this will not be permitted is indicated by what the court said in Freeman v. Hewit, 329 U.S. 249, 254, 67 S.Ct. 274, 277, 91 L.Ed. 265, to-wit: "It has been suggested that such a tax is valid when a similar tax is placed on local trade, and a specious appearance of fairness is sought to be imparted by the argument that interstate commerce should not be favored at the expense of local trade. So to argue is to disregard the life of the Commerce Clause. Of course a State is not required to give active advantage to interstate trade. But it cannot aim to control that trade even though it desires to control its own. It cannot justify what amounts to a levy upon the very process of commerce across States lines by pointing to a similar hobble on its

local trade. It is true that the existence of a tax on its local commerce detracts from the deterrent effect of a tax on interstate commerce to the extent that it removes the temptation to sell the goods locally. But the fact of such a tax, in any event, puts impediments upon the currents of commerce across the State line, while the aim of the Commerce Clause was precisely to prevent States from exacting toll from those engaged in national commerce. The Commerce Clause does not involve an exercise in the logic of empty categories. It operates within the framework of our federal scheme and with due regard to the national experience reflected by the decisions of this Court, even though the terms in which these decisions have been cast may have varied. Language alters, and there is a fashion in judicial writing as in other things."

In the case at bar there is no pretense that the tax is laid on a local incident connected with or related to the business. The tax is simply imposed on the business as a whole and is moreover not separable as to local and interstate business.

On behalf of the Territory decisions are cited in which the person challenging the tax was neither the same person who shipped the merchandise from outside the state nor his agent; decisions involving the New York tax on purchasers which the Supreme Court of the United States held in McGoldrick v. Berwind-White, 309 U.S. 33, 49, 60 S.Ct. 388, 84 L.Ed. 565, 128 A. L.R. 876, was in effect a use tax; decisions from which are quoted general principles with which there can be no quarrel; and a decision in which the Supreme Court of Virginia expressly disregards Robbins v. Shelby County Taxing District, 120 U.S. 489, 7 S.Ct. 592, 30 L.Ed. 694, notwithstanding that it is still followed by the Supreme Court of the United States, as attested by Gwin, White & Prince v. Henneford, 305 U.S. 434, 437, 59 S.Ct. 325, 83 L.Ed. 272, and Nippert v. Richmond, 327 U.S. 416, 420, 66 S.Ct. 586, 90 L.Ed. 760, 162 A.L.R. 844. The remaining decisions cited are not in point.

The question presented is to be determined rather upon a consideration of cases involving substantially similar factual situations and taxes, such as Robbins v. Shelby, 120 U.S. 489; Philadelphia & S. M. S. S. Co. v. Pennsylvania, 122 U.S. 326, 7 S.Ct. 1118, 30 L.Ed. 1200; Leloup v. Port of Mobile, 127 U.S. 640, 8 S.Ct. 1380, 32 L.Ed. 311; Rearick v. Pennsylvania, 203 U.S. 507, 27 S.Ct. 159, 51 L.Ed. 295; Caldwell v. North Carolina, 187 U.S. 622, 23 S.Ct. 229, 47 L.Ed. 336; Crew Levick v. Pennsylvania, 245 U.S. 292, 38 S.Ct. 126, 62 L.Ed. 295; Bowman v. Continental Oil Co., 256 U.S. 642, 41 S.Ct. 606, 65 L.Ed. 1139; East Ohio Gas Co. v. Tax Commission, 283 U.S. 465, 470, 51 S.Ct. 499, 75 L.Ed. 1171; Cooney v. Mountain States Telephone & Telegraph Co., 294 U.S. 384, 55 S.Ct. 477, 79 L.Ed. 934; and particularly J. D. Adams Mfg. Co. v. Storen, 304 U.S. 307, 58 S.Ct. 913, 82 L.Ed. 1365, 117 A.L.R. 429; and Gwin, White & Prince v. Henneford, 305 U.S. 434, 59 S.Ct. 325, 83 L.Ed. 272.

None of these decisions has been overruled. On the contrary, many of them are still being cited with approval. In Crew Levick Co. v. Pennsylvania, supra, an annual mercantile license tax of $3.00 on each wholesale dealer in goods, wares and merchandise, and one-half mill additional on each dollar of the gross volume of business transacted annually, was held to be a tax on interstate commerce and therefore invalid. The plaintiff sold from its warehouse in the state merchandise to the value of $47,000 to purchasers within the state, and to the value of about $430,000 to customers in foreign countries, the latter sales having been negotiated by agents abroad who took and transmitted the orders to the plaintiff in Pennsylvania, subject to its approval, while in some cases orders were sent in direct by the customers in foreign countries. Plaintiff protested against so much of the tax as was based on gross receipts from foreign sales.

In Bowman v. Continental Oil Co., supra, an annual license tax of $50.00 for each place of business, which was in addition to two cents for each gallon of gasoline sold, was held to be inseparable and, therefore, imposed upon the entire business, including interstate commerce, and consequently void, the court saying that, since the plaintiff conducts its interstate and domestic business in gasoline indiscrimi-

nately and at the same stations and by the same agencies, the license tax cannot be enforced without interfering with interstate commerce.

The rule that the tax could not be sustained when it covers the entire operation was followed in Cooney v. Mountain States Telephone & Telegraph Co., supra, the court saying that a privilege or occupation tax which a state imposes with respect to both interstate and intrastate business, through an indiscriminate application to instrumentalities common to both sorts of commerce, has frequently been held to be invalid.

In J. D. Adams Mfg. Co. v. Storen, supra [304 U.S. 307, 58 S.Ct. 916], the appellant, an Indiana corporation, maintained its home office, principal place of business, and a factory in the state. Eighty-seven per cent of its products were sold to customers in other states and foreign countries upon orders taken subject to approval at the home office; shipments were made from the factory and remitted to the home office. In holding that a privilege tax, imposing one cent on every dollar received from sales, was invalid, the court said: "The vice of the statute as applied to receipts from interstate sales is that the tax includes in its measure, without apportionment, receipts derived from activities in interstate commerce; and that the exaction is of such a character that if lawful it may in substance be laid to the fullest extent by states in which the goods are sold as well as those in which they are manufactured. Interstate commerce would thus be subjected to the risk of a double tax burden to which intrastate commerce is not exposed, and which the commerce clause forbids. We have repeatedly held that such a tax is a regulation of, and a burden upon, interstate commerce * * *. It is because the tax, forbidden as to interstate commerce, reaches indiscriminately and without apportionment, the gross compensation for both interstate commerce and intrastate activities that it must fail in its entirety so far as applied to receipts from sales interstate."

In McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876, the court in commenting on Adams v. Storen, supra, said that the tax there was invalidated because the receipts derived from activities in interstate commerce, as distinguished from the receipts from activities wholly intrastate, were included in the measure without segregation or apportionment. To the same effect is Gwin, White & Prince v. Henneford, 305 U.S. 434, 59 S.Ct. 325, 83 L.Ed. 272, in which Robbins v. Shelby, 120 U.S. 489, 7 S.Ct. 592, 30 L.Ed. 694, and Caldwell v. North Carolina, 187 U.S. 622, 23 S.Ct. 229, 47 L.Ed. 336, were cited with approval. The foregoing cases are determinative of this controversy.

In McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 391, 84 L.Ed. 565, 128 A.L.R. 876, upon which the plaintiff relies, the tax was one on purchasers for consumption of tangible personal property, and the court held that, the ultimate burden of the tax, both in form and substance, is thus laid upon the buyer and is measured by the sales price and attaches upon the transfer of title or possession. Moreover, it was held to be in effect a use tax. 309 U.S. 49, 60 S.Ct. 393, 84 L.Ed. 565, 128 A.L.R. 876.

A tax of the kind here under discussion, measured in effect by gross receipts, was condemned as recently as Fishers Blend Station v. Tax Commission of State of Washington, 297 U.S. 650, 56 S.Ct. 608, 80 L.Ed. 956, and Puget Sound Stevedoring Co. v. Tax Commission, 302 U.S. 90, 58 S.Ct. 72, 82 L.Ed. 68.

The rule deducible from these decisions when rid of confusing and distracting considerations is that a non-discriminatory state tax, measured by the amount of sales or gross receipts, is valid when so apportioned as to involve no risk of a similar tax on the same sales or receipts by another state. Manifestly, since the nature of the business of the plaintiff does not permit of apportionment, the Territory is relieved of this requirement, but it is clear that, if valid, the same kind of tax could be laid by the State of Washington on the sales or gross receipts of this interstate business and, hence, the tax does not fall within the rule and must be condemned.

672

Undoubtedly there is a noticeable trend away from the condemnation of taxes on interstate commerce by the application of formal rules, but there is a misconception as to its effect and extent. The cumulative or multiple burden test has become a factor of primary importance in determining the validity of taxes affecting interstate commerce, particularly those measured by the amount of sales or gross receipts as in the instant case. The most that can be said, therefore, for the views of the plaintiff is that an analysis of the relevant decisions warrants the conclusion that henceforth in confused and developing fields of constitutional law, the rule of stare decisis will not be mechanically applied, and emphasis will be on practical considerations rather than on formal rules. The tax here imposes a direct and immediate burden on ·interstate commerce, and for that reason is invalid.

The complaint is accordingly dismissed.